# Illinois Official Reports

## Appellate Court

***1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*,**
**2014 IL App (1st) 130962**

| | |
|---|---|
| Appellate Court Caption | 1010 LAKE SHORE ASSOCIATION, Plaintiff-Appellee, v. DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Loan Tr 2004-1, Asset-Backed Certificates, Series 2004-1, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-0962 |
| Filed | August 12, 2014 |
| Rehearing denied | September 29, 2014 |
| Modified upon denial of rehearing | October 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant mortgagee purchased a condominium unit at a foreclosure sale but failed to make an assessment payment after the sale pursuant to section 9(g)(3) of the Condominium Property Act to extinguish the plaintiff condominium association's lien for the assessments not paid by the mortgagor, the trial court properly entered summary judgment for the association on its claim to enforce its lien for the unpaid assessments, and the trial court's award of attorney fees and costs was affirmed as reasonable. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-M1-711284; the Hon. Martin Moltz, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Keith Werwas and David Pustinik, both of Potestivo & Associates, P.C., of Chicago, for appellant.

Matthew J. Goldberg, of Bancroft, Richman & Goldberg, LLC, of Chicago, for appellee.

Panel

JUSTICE SIMON delivered the judgment of the court, with opinion.
Justice Pierce concurred in the judgment and opinion.
Justice Liu dissented, with opinion.

**OPINION**

¶ 1    Defendant, Deutsche Bank National Trust Co., appeals from orders of the circuit court of Cook County granting summary judgment in favor of plaintiff, 1010 Lake Shore Association, denying defendant's motion to reconsider the court's grant of summary judgment, and awarding plaintiff attorney fees and costs. On appeal, defendant contends that the court erred by granting summary judgment in favor of plaintiff because the court misinterpreted section 9(g)(3) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(3) (West 2008)) and a genuine issue of material fact existed regarding the amount of assessments incurred after the foreclosure and sale of the subject property. Defendant also contends that the court abused its discretion by denying its motion to reconsider and awarding the amount of attorney fees and costs sought by plaintiff. For the reasons that follow, we affirm.

¶ 2                                   BACKGROUND
¶ 3    The record shows that defendant purchased the condominium unit at issue at a judicial sale on June 17, 2010. On May 17, 2012, plaintiff filed a complaint alleging that defendant was unlawfully withholding possession of the unit because, as of March 27, 2012, defendant owed $62,530.81 in assessments. Plaintiff requested possession of the property, an award of all unpaid assessments incurred as of the date of trial, attorney fees, and costs. On August 9, 2012, plaintiff filed a motion for summary judgment, asserting that there were no questions of material fact regarding defendant's failure to pay assessments or the amount owed and that, because defendant failed to make any payments following the foreclosure and sale, the lien against the property which resulted from prior unpaid assessments had not been extinguished and defendant was required to pay those assessments. Plaintiff attached the signed affidavit of Mary Morrison, the property manager for plaintiff, in which Morrison averred that no assessment payments had been made on the unit's account since July 1, 2010, the outstanding balance on the account as of August 8, 2012, was $67,935.16, assessments accrued at the rate of $1,041.87 per month, and late fees accrued at the rate of $50 per month. Defendant responded that it was not liable for any unpaid assessments incurred prior to its purchase of the unit, which accounted for more than $43,000 of the total amount of unpaid assessments, and

- 2 -

that a genuine issue of material fact existed regarding the amount of assessments that were incurred after it purchased the unit. On October 29, 2012, the court entered orders granting summary judgment in favor of plaintiff in the amount of $70,018.90 and granting plaintiff possession of the property.

¶ 4 On November 20, 2012, plaintiff filed a fee petition requesting $7,423.50 in attorney fees and costs. On November 28, 2012, defendant filed a motion to reconsider the order granting summary judgment, asserting that the court misinterpreted section 9(g)(3) of the Act, the amount of assessments due after the foreclosure and sale was unclear, and plaintiff's claim was barred by the doctrine of *res judicata*. On December 17, 2012, defendant filed a response to plaintiff's fee petition, asserting that plaintiff was not entitled to any attorney fees because the court erred by granting summary judgment, the amount of attorney fees was unreasonable, and plaintiff failed to provide sufficient support for its request of $698.50 for filing costs. On February 19, 2013, the court entered an order denying defendant's motion to reconsider, awarding plaintiff $6,725 in attorney fees and $698.50 in costs, and finding there was no just reason for delaying an appeal from its order.

¶ 5 ANALYSIS

¶ 6 I. Summary Judgment

¶ 7 A. Section 9(g)(3)

¶ 8 Defendant contends that the court erred by granting summary judgment in favor of plaintiff because the court's decision was based on a misinterpretation of section 9(g)(3) of the Act. A party is entitled to summary judgment when the pleadings, depositions, admissions, affidavits, and exhibits on file, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106 (2007). The circuit court's ruling on a motion for summary judgment is reviewed *de novo*. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004).

¶ 9 A court's primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Prazen v. Shoop*, 2013 IL 115035, ¶ 21. The first step in determining legislative intent is to examine the language of the statute, and when the language is clear and unambiguous, the statute must be given its plain meaning without resort to further aids of statutory construction. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008).

¶ 10 Section 9(g)(3) consists of two sentences, the first of which provides that "[t]he purchaser of a condominium unit at a judicial foreclosure sale *** shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale." 765 ILCS 605/9(g)(3) (West 2008). The second sentence provides that "[s]uch payment confirms the extinguishment of any lien created pursuant to paragraph (1) *** of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court." *Id.* Section 9(g)(1) provides that "[i]f any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due," the amount of any unpaid assessments, together with any interest, late charges, reasonable attorney fees, and costs of collections, "shall constitute a lien on the interest of the unit owner in the property." 765 ILCS 605/9(g)(1) (West 2008).

¶ 11    Defendant asserts that it cannot be required to pay the more than $40,000 in assessments that were incurred under section 9(g)(1) prior to its purchase of the unit because section 9(g)(3) provides that the purchaser of a condominium unit at a foreclosure sale only has a duty to pay its share of common expenses assessed from and after the first day of the month following the sale. Plaintiff responds that the plain language of section 9(g)(3) provides that a lien arising from unpaid assessments by the prior owner under section 9(g)(1) is not extinguished until the new owner pays its share of the common expenses assessed after the foreclosure and sale. Thus, the issue presented by the parties is whether the purchaser of a condominium unit that does not pay its assessments following its purchase of the unit can be held responsible for assessments that were not paid by the previous owner or whether, pursuant to section 9(g)(3), a new owner may never be held responsible for past assessments. As such, we will limit our consideration to that specific statutory question.

¶ 12    While we agree with defendant that the first sentence of section 9(g)(3) provides that the purchaser of a unit at a foreclosure sale only has a duty to pay its share of the common expenses assessed from the first day of the month after the date of the sale, the second sentence of section 9(g)(3), which defendant does not address, provides that the making of that payment "confirms the extinguishment" of a lien created under section 9(g)(1). The word "confirm" is defined as meaning "[t]o give formal approval to," "[t]o verify or corroborate," and "[t]o make firm or certain." Black's Law Dictionary 340 (9th ed. 2009). Thus, section 9(g)(3), as a whole, provides that the purchaser of a unit at a judicial foreclosure sale has a duty to pay assessments which are incurred after the sale and that the effect of making such a payment is to approve, verify, and make certain the extinguishment of a preexisting lien created under section 9(g)(1). As such, we determine that, under the plain language of section 9(g)(3), a lien created under section 9(g)(1) for unpaid assessments by a previous owner is not fully extinguished following a judicial foreclosure and sale until the purchaser makes a payment for assessments incurred after the sale.

¶ 13    In addition, a court should interpret a statute as a whole and, "if possible, so that no term is rendered superfluous or meaningless." *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 16. If this court adopted defendant's interpretation of section 9(g)(3) and held that the purchaser of a unit at a foreclosure sale may never be required to pay assessments that are incurred prior to the sale, we would be holding that a lien created under section 9(g)(1) for unpaid assessments by a previous owner is fully extinguished by the foreclosure and sale. Such a holding would render the second sentence of section 9(g)(3) superfluous and meaningless because the extinguishment of the section 9(g)(1) lien would have already been confirmed before the purchaser was required to make any assessment payments under section 9(g)(3).

¶ 14    Defendant, citing section 15-1509(c) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1509(c) (West 2008)) and *BCGS, L.L.C. v. Jaster*, 299 Ill. App. 3d 208, 213 (1998), asserts that it cannot be required to pay any assessments incurred prior to the foreclosure and sale of the unit because such a holding would contradict well-settled law, which provides that all outstanding claims on property that has been the subject of a foreclosure and sale are extinguished and that the purchaser takes the property free of any such claims. However, when a general statutory provision and a specific statutory provision relate to the same subject, the statute relating to that one specific subject must prevail over the statute designed to apply to cases more generally. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 233 (2007). Thus, section 9(g)(3), which is contained in the Condominium Property Act and relates to the payment of assessments by the purchaser of a condominium unit at a judicial foreclosure sale

and the effect the making of such a payment has on the status of a lien arising from a previous owner's failure to make assessment payments, is a specific statutory provision that must control over the general rule of foreclosure law cited by defendant. As such, we conclude that a lien created pursuant to section 9(g)(1) is not fully extinguished by a foreclosure and sale because the purchaser must make an assessment payment under section 9(g)(3) to confirm the extinguishment of that lien and that the court did not misinterpret section 9(g)(3) when it granted summary judgment in favor of plaintiff.

¶ 15    In reaching that conclusion, we have considered *Pembrook Condominium Ass'n-One v. North Shore Trust & Savings*, 2013 IL App (2d) 130288, a recent case involving section 9(g)(3), and find it distinguishable. In *Pembrook*, the court held that a condominium association was not entitled to unpaid assessments incurred prior to the defendant's purchase of a unit at a foreclosure sale because the defendant tendered payment for association charges incurred the month after its purchase and extinguished any lien which may have existed under section 9(g)(1) as a result of the prior owner's failure to make assessments payments. *Id.* ¶ 17. In doing so, the court stated that "[t]o hold that plaintiff's lien survived the payments would contradict the plain and necessary implication of section 9(g)(3). If the payments extinguished the lien that had been created under section 9(g)(1), then plaintiff cannot enforce that lien." *Id.* In this case, however, defendant has not made any association payments after it purchased the unit and, therefore, never extinguished the preexisting lien created pursuant to section 9(g)(1).[1]

¶ 16    We also point out that we have considered the legislative history behind section 9(g)(3) and that we find it to be mostly inconclusive regarding the issue before us and, to the extent it provides any guidance, further supports our conclusion. Regarding the bill that added the second sentence to section 9(g)(3), Senator Marovitz stated that it "just clarifies when the foreclosure sale extinguishes the lien of the association." 87th Ill. Gen. Assem., Senate Proceedings, June 19, 1991, at 158 (statements of Senator Marovitz). Senator Marovitz later stated that the bill "confirms the extinguishment of a lien on a condominium for common expenses by payment of those expenses at a foreclosure sale of the condominium by the purchaser. And if the sale is not completed, the lien is not extinguished." 87th Ill. Gen. Assem., Senate Proceedings, June 20, 1991, at 109 (statements of Senator Marovitz). In the House, Representative Williams stated that the bill "provides that when the purchaser pays for common expense, it clears up the priority of liens in that particular situation." 87th Ill. Gen. Assem., House Proceedings, June 27, 1991, at 74-75 (statements of Representative Williams). Thus, while the legislators' statements that the payment of common expenses extinguishes an association's lien supports our conclusion that a section 9(g)(1) lien is not fully extinguished until the purchaser makes a payment required by section 9(g)(3), those statements are somewhat contradicted by Senator Marovitz's indication that such a payment would be made at the foreclosure sale.

---

[1]To the extent the dissent relies upon the portion of the *Pembrook* opinion stating that the association's lien could not be enforced against the mortgagee with regard to charges assessed before the mortgagee obtained title to the property, we note that the part of the opinion cited by the dissent relies on general foreclosure law and does not take into account section 9(g)(3) of the Act and that *Newport Condominium Ass'n v. Talman Home Federal Savings & Loan Ass'n of Chicago*, 188 Ill. App. 3d 1054 (1988), the case upon which the *Pembrook* court relied, was decided before section 9(g)(3) was amended to include its second sentence (Pub. Act 87-692 (eff. Jan. 1, 1992)).

¶ 17    Regardless, we need not consider interpretative aids such as the legislative history of the statute because, for the reasons set forth above, the statutory language of section 9(g)(3) is clear and unambiguous. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 184 (2007). Section 9(g)(1) creates a lien on the property, not a personal judgment against the foreclosure purchaser, when assessment payments are not made for the first full month following the judicial foreclosure sale. *Lake Hinsdale Village Condominium Ass'n v. Department of Public Aid*, 298 Ill. App. 3d 192, 196 (1998). Because of defendant's nonpayment of common expenses after the judicial foreclosure sale, section 9(g)(3) clearly provides that the lien against the property was not extinguished and the court properly concluded that the lien against the property remains.

¶ 18                              B. Genuine Issue of Material Fact

¶ 19    Defendant next contends that the court erred by granting summary judgment because a genuine issue of material fact existed regarding the amount of assessments incurred following its purchase of the unit. However, attached to plaintiff's motion for summary judgment was Morrison's affidavit, in which she set forth the outstanding balance on the unit's account and the rate at which monthly assessments and late fees would add to that balance. As "facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion" (*Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986); *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 14), Morrison's averment as to the amount of unpaid assessments must be taken as true with regard to the summary judgment motion. Thus, we conclude that there is no genuine issue of material fact regarding the amount of assessments owed by defendant and that the court did not err by granting summary judgment in favor of plaintiff.

¶ 20    Defendant claims that the account history for the unit, which was attached to Morrison's affidavit, reflects that assessment payments were made after it purchased the unit and that those payments confirmed the extinguishment of the lien arising from the previous owner's unpaid assessments. While defendant would presumably know whether or not it made assessment payments, defendant did not raise this argument in its response to plaintiff's motion for summary judgment, motion to reconsider, reply in support of its motion to reconsider, or appellant's brief. Instead, defendant has made this argument for the first time in its reply brief on appeal, at which time plaintiff does not have an opportunity to respond to defendant's claim. Issues not raised before the circuit court cannot be argued for the first time on appeal (*Robidoux v. Oliphant*, 201 Ill. 2d 324, 344 (2002)) and points not argued in an appellant's brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing" (Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013)). Thus, defendant has forfeited any claim that plaintiff was not entitled to summary judgment because assessment payments were made after defendant purchased the unit.

¶ 21                              II. Motion to Reconsider

¶ 22    Defendant contends that the court abused its discretion by denying its motion to reconsider because the court erred in its application of section 9(g)(3) of the Act and plaintiff's claim was barred by the doctrine of *res judicata*. As we have already concluded that the circuit court did not err in its application of section 9(g)(3), we need only consider whether plaintiff's claim was barred by the doctrine of *res judicata*.

¶ 23    The purpose of a motion to reconsider is to bring to the circuit court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 23. The decision to grant or deny a motion to reconsider lies within the sound discretion of the circuit court and will not be disturbed on appeal absent an abuse of that discretion. *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 17. A circuit court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt its view. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 24    Defendant asserts that, by seeking to recover unpaid assessments that were incurred prior to the judicial foreclosure and sale, plaintiff was collaterally attacking the prior orders entering a judgment of foreclosure and sale and approving the sale and that plaintiff was barred from doing so because it could have raised the issue of prior unpaid assessments in the foreclosure action. The doctrine of *res judicata* provides that a final judgment on the merits acts as an absolute bar to a subsequent action between the same parties involving the same claim, demand, or cause of action and that the bar extends to all matters that were decided or could have been decided in the prior action. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. Thus, *res judicata* only applies if there is a final judgment on the merits rendered by a court of competent jurisdiction, an identity of cause of action, and an identity of parties or their privies. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 18. An identity of cause of action exists when the claims arise from a single group of operative facts. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998).

¶ 25    We initially point out that defendant's *res judicata* claim was not based on any newly discovered evidence or changes in the law and that defendant has not provided any explanation as to the reason it did not raise this argument in its response to plaintiff's motion for summary judgment. As a party may not raise a new legal theory in a motion to reconsider (*North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006)), defendant was not entitled to relief on the *res judicata* claim raised in its motion to reconsider. Moreover, there is no identity of cause of action between plaintiff's claim and the foreclosure action because they are based on different operative facts, as plaintiff's claim is based on defendant's failure to pay assessments incurred after the foreclosure sale, which had no bearing on the foreclosure action. As such, we conclude that the court did not abuse its discretion by denying defendant's motion to reconsider.

¶ 26                                    III. Attorney Fees

¶ 27    Defendant further contends that the court abused its discretion by awarding plaintiff $7,423.50 in attorney fees and costs, asserting that plaintiff was not entitled to any attorney fees because the court erred by granting summary judgment in plaintiff's favor. However, as we have already concluded that the court did not err by granting summary judgment in plaintiff's favor, we need only consider defendant's challenge to the reasonableness of the amount of attorney fees and costs awarded by the court.

¶ 28    The party seeking attorney fees bears the burden of presenting sufficient evidence to establish that the requested fees are reasonable. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 401 Ill. App. 3d 868, 879 (2010). In determining the reasonable value of attorney fees, a court should consider the skill and standing of the attorney, the nature of the cause, novelty and difficulty of the questions at issue, importance of the subject matter, degree of responsibility involved in managing the case, time and labor required, customary charges in the community,

benefits resulting to the client, and the connection between the amount of fees sought and the amount of money involved in the litigation. *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 2013 IL App (1st) 111779, ¶ 53. A circuit court's decision regarding the amount of attorney fees to which a party is entitled will not be reversed absent an abuse of discretion. *Peleton, Inc. v. McGivern's, Inc.*, 375 Ill. App. 3d 222, 225 (2007).

¶ 29    Defendant asserts that the amount of attorney fees plaintiff requested in its fee petition was unreasonable because during the course of litigation plaintiff's counsel "merely sent demand letters and drafted a complaint and motion for summary judgment." In the fee petition, counsel for plaintiff represented that his firm expended approximately 40.6 hours prosecuting the action against defendant. In support, plaintiff attached a copy of the fee statement which sets forth the legal services provided, the identity of the attorney providing the legal services, an itemization of the time expended for the individual service, and the hourly rate charged. As such, plaintiff presented the court with sufficient evidence to establish that the requested fees were reasonable, and the court did not abuse its discretion by granting plaintiff's request for attorney fees. To the extent defendant claims that the amount of attorney fees was excessive in light of the amount of money at stake in the underlying claim, we point out that the amount of attorney fees awarded by the court was less than 10% of the judgment entered in plaintiff's favor. Further, while defendant also asserts that plaintiff failed to provide sufficient evidence to support the award of $698.50 for filing costs, the record shows that plaintiff attached copies of receipts for each cost to its reply in support of its fee petition. As such, we find ample support for the amount of attorney fees and costs awarded by the circuit court.

¶ 30                                CONCLUSION

¶ 31    Based upon the record herein, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.

¶ 33    JUSTICE LIU, dissenting.

¶ 34    I disagree with the majority's analysis of the relevant statutory provisions at issue in this case, namely, section 9(g)(3) of the Act (765 ILCS 605/9(g)(3) (West 2008)) and section 15-1509(c) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1509(c) (West 2008)). Based upon its interpretation of these two provisions, the majority now creates the rule that a mortgagee who takes title to a condominium unit–in this particular case, as the purchaser of the unit in a foreclosure sale–is liable to the condominium association for unpaid assessments incurred by the mortgagor (*i.e.*, the previous owner) prior to the date on which the mortgagee took title, *even if* the condominium association was a named party in the foreclosure suit and had its lien interest terminated in that suit. In my opinion, this holding is inconsistent with the plain language of section 9(g)(3) of the Act and section 15-1509(c) of the Foreclosure Law. Furthermore, the majority's opinion essentially allows an association to revive a lien on the property that was previously extinguished in the foreclosure action brought by the mortgagee, by initiating a forcible entry and detainer claim after the mortgagee takes title. Section 15-1509(c) of the Foreclosure Law expressly bars such a claim. Accordingly, I respectfully dissent from the portion of the majority's decision that affirms the circuit court's order imposing liability on the defendant for assessments that became due prior to July 1, 2010.

¶ 35    In its opinion, the majority acknowledges that under section 9(g)(3) of the Act, the defendant, as a mortgagee who purchased the unit at a foreclosure sale, "only has a duty to pay its share of the common expenses assessed from the first day of the month after the date of the sale." *Supra* ¶ 12. However, in determining the scope of the liability imposed upon the defendant for delinquent assessments owed to the condominium association, the majority relies on the portion of section 9(g)(3) which states that the mortgagee's payment of assessments that become due after it takes title "confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court." 765 ILCS 605/9(g)(3) (West 2008). According to the majority, "a lien created under section 9(g)(1) for unpaid assessments by a previous owner is not fully extinguished following a judicial foreclosure and sale until the purchaser makes a payment for assessments incurred after the sale." *Supra* ¶ 12. The majority reasons that the phrase " '[s]uch payment confirms the extinguishment of any lien' " would be merely superfluous if a purchaser of a foreclosure property is never required to pay assessments that are incurred prior to a foreclosure sale. *Supra* ¶ 10 (quoting 765 ILCS 605/9(g)(3) (West 2008)).

¶ 36    While I take issue with the general proposition that section 9(g)(3) should be construed to mean that a condominium association's lien will survive the foreclosure suit when a final judgment has been entered disposing of its interests in the property, or that the association can enforce a claim against the mortgagee for unpaid assessments incurred by the mortgagor, the key dispute that I have with the majority's analysis is the notion that section 15-1509(c) of the Mortgage Foreclosure Law has no relevant application in this case because section 9(g)(3) of the Act "is a specific statutory provision that must control over the general rule of foreclosure law cited by defendant." *Supra* ¶ 14. To the contrary, section 15-1509(c) expressly bars claims brought by "all parties to the foreclosure" after the sale is approved by the court. Section 15-1509(c) provides in relevant part:

> "**Claims Barred.** Any vesting of title *** by deed pursuant to subsection (b) of Section 15-1509 [delivery of the deed after confirmation of sale], unless otherwise specified in the judgment of foreclosure, *shall be an entire bar of* (i) *all claims of parties to the foreclosure ***.*" (Emphasis added.) 735 ILCS 5/15-1509(c) (West 2008).

¶ 37    The majority apparently acknowledges the fact that section 15-1509(c) of the Mortgage Foreclosure Law is applicable to bar claims on the property by parties in a foreclosure action following confirmation of the sale, but finds that this provision potentially conflicts with section 9(g)(3) of the Act. The majority resolves this purported conflict by concluding that section 9(g)(3) is the more specific statutory provision of the two, and notes that "when a general statutory provision and a specific statutory provision relate to the same subject, the statute relating to that one specific subject must prevail over the statute designed to apply to cases more generally." *Supra* ¶ 14 (citing *Murray*, 224 Ill. 2d at 233). While I also recognize this tenet of statutory interpretation, I would elect to follow the doctrine of *in pari materia* when applying the two provisions in the case before us. "Under this doctrine of construction, two legislative acts that address the same subject are [to be] considered with reference to one another, so that they may be given harmonious effect." *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002).

¶ 38    Upon comparing section 9(g)(3) of the Act to section 15-1509(c) of the Mortgage Foreclosure Law, I do not find a conflict. These provisions, read together, establish a

complementary procedure for extinguishing a lien held by a condominium association following a judicial foreclosure sale. Section 15-1509(c) of the Mortgage Foreclosure Law applies in the first instance when a condominium association has been named a party in the foreclosure action. It expressly states that "all claims of parties to the foreclosure and *** nonrecord claimant who is given notice of the foreclosure" are barred after title is vested with the purchaser of the property. 735 ILCS 5/15-1509(c) (West 2008); see also 735 ILCS 5/15-1501(a), (b) (West 2008) (distinguishing between necessary parties in a foreclosure suit and permissible parties). Section 9(g)(3) of the Act, on the other hand, applies in the situation where a condominium association with an enforceable lien was not named as a party in the foreclosure suit or provided with notice of foreclosure as a nonrecord claimant. It provides an avenue for the purchaser to extinguish a preexisting lien that *survives* the foreclosure action, by paying the assessments that accrue after the date of the sale. 765 ILCS 605/9(g)(3) (West 2008). Section 9(g)(3) does not, however, create a vehicle for liability on a lien interest that has been terminated in the foreclosure suit and therefore no longer exists.

¶ 39    In this case, the plaintiff was purportedly a party in the foreclosure action and, therefore, had an opportunity to assert its lien based on the outstanding assessments owed by the mortgagor before final judgment was entered in the action.[2] Therefore, we can presume that the plaintiff's lien based on preforeclosure assessments was adjudicated during the proceeding. Because there is no evidence that the judgment of foreclosure provided for any specific relief in favor of the association, we can reasonably conclude that the lien was extinguished when the court approved the sale and distribution of proceeds. Additionally, the plaintiff cannot now enforce its extinguished lien based on the amount owed prior to July 1, 2010 by simply attaching that amount onto a claim against the mortgagee for assessments incurred on or after July 1, 2010. Circumventing section 15-1509(c) of the Mortgage Foreclosure Law cannot rationally be the intended purpose or effect of section 9(g)(3) of the Act.

¶ 40    Next, the majority finds this case distinguishable from *Pembrook Condominium Ass'n-One v. North Shore Trust & Savings*, 2013 IL App (2d) 130288, because the mortgagee in that case tendered payment for the assessments that became due following the sale. In *Pembrook*, the condominium association filed a forcible entry and detainer action against the mortgagee after the mortgagee purchased the unit in the foreclosure sale for overdue assessments owed by the mortgagor. The association argued that the mortgagee had failed to name the association as a party in the foreclosure suit and, therefore, disputed the proposition that its lien was extinguished upon sale of the unit. The trial court dismissed the association's claim for the preforeclosure assessments. On appeal, we affirmed the trial court's decision for two reasons: (1) based on case authority, the mortgagee was not legally responsible for assessments that accrued prior to the date the mortgagee took title, and (2) under section 9(g)(3) of the Act, the condominium association had no basis for recovery because the mortgagee tendered payment for the assessments that became due after it took title. 2013 IL App (2d) 130288, ¶ 9. We acknowledged in *Pembrook* that the condominium association may not have been a party in the foreclosure suit; however, we decided that "[e]ven if [the association's] lien survived the foreclosure judgment in favor of [the mortgagee], it could not be enforced against [the

_____

[2]Although neither party has presented this court with a record containing the judgment of foreclosure or the order confirming the sale, the plaintiff does not dispute that it was a party in the foreclosure action.

- 10 -

mortgagee] to the extent that it was based on association charges that came due before [the mortgagee] obtained title to the property." *Id.* ¶ 14. Further, we found to be controlling, based on *Newport Condominium Ass'n v. Talman Home Federal Savings & Loan Ass'n of Chicago*, 188 Ill. App. 3d 1054, 1059-60 (1988), the rule that "the obligation to pay condominium assessments is a covenant that runs with the land and is binding only upon title holders," and, therefore, a mortgagee that subsequently obtains title following a foreclosure is not liable for the assessments which accrued prior to the date on which it took title.[3]

¶ 41    The majority's rationale for distinguishing *Pembrook* does not take into account the broader rule applied in that case that the mortgagee is not liable for the assessments incurred prior to taking title. *Pembrook* was not based solely on the fact that the mortgagee complied with section 9(g)(3) of the Act by tendering payment for the assessments that accrued after the sale. Furthermore, although the *Pembrook* decision was not predicated on the application of section 15-1509(c) of the Mortgage Foreclosure Law, I believe that it is still instructive. Simply put, under *Pembrook* and *Newport*, even if section 15-1509(c) of the Mortgage Foreclosure Law does not apply–for instance, if the mortgagee has failed to name the condominium association as a party in the foreclosure action–the association may not enforce the lien related to delinquent assessments owed by the prior owner against a *mortgagee* who subsequently takes title to the unit. This does not mean, however, that the plaintiff is left with no recourse for the unpaid assessments owed by the prior mortgagor; the plaintiff can pursue a collection action directly against the mortgagor.

¶ 42    Based on the foregoing reasons, I respectfully disagree with the majority's reasoning and, therefore, dissent from its ruling. I would affirm the circuit court's judgment solely on the defendant's liability for the unpaid assessments incurred on or after July 1, 2010; reverse the remainder of the judgment on liability and damages for assessments incurred prior to July 1, 2010; and remand the cause to the circuit court for a prove-up of the assessments due from the defendant on or after July 1, 2010, including applicable late charges, interest, and legal fees and costs consistent with the Act and/or condominium association bylaws and declaration.

---

[3]In *Newport*, we held that the mortgagee had "constructive" title when it took the sheriff's deed to the condominium unit. The rule in *Newport* nonetheless applies to a mortgagee that takes actual title to the property.