# Illinois Official Reports

## Appellate Court

---

**5510 Sheridan Road Condominium Ass'n v. U.S. Bank, 2017 IL App (1st) 160279**

---

| | |
|---|---|
| Appellate Court Caption | 5510 SHERIDAN ROAD CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. U.S. BANK, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-0279 |
| Filed<br>Modified upon denial<br>of rehearing | March 31, 2017<br><br>May 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-M1-702180; the Hon. Martin Paul Moltz, Judge, presiding. |
| Judgment | Reversed and remanded with instructions. |
| Counsel on Appeal | Maurice Wutscher LLP, of Chicago (Ralph T. Wutscher, Coleman J. Braun, and Jeffrey T. Karek, of counsel), for appellant.<br><br>Johnson & Sullivan, Ltd., of Chicago (Mario A. Sullivan, of counsel), for appellee. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1     After defendant, U.S. Bank, acquired a condominium unit through a foreclosure sale, plaintiff, 5510 Sheridan Road Condominium Association (association), filed this lawsuit against U.S. Bank pursuant to the Forcible Entry and Detainer Act (Forcible Entry Act) (735 ILCS 5/9-101 *et seq.* (West 2014)) seeking possession of the unit, presale common expenses, and attorney fees. The association's theory of recovery was that payments U.S. Bank remitted to the association for postsale common expenses months after the foreclosure sale were untimely under section 9(g)(3) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(3) (West 2014)) and thus did not extinguish the association's lien for presale expenses. The circuit court agreed and granted summary judgment to the association and an order of possession, which included a judgment for unpaid presale expenses. We reverse those orders and enter summary judgment in favor of U.S. Bank.

¶ 2                                    BACKGROUND

¶ 3     The following facts are drawn from the pleadings and motions contained in the record and a joint stipulation, which the parties submitted to the circuit court at the summary judgment stage. On February 23, 2012, defendant U.S. Bank sued Thomas and Marilyn Hoffman to foreclose on the bank's mortgage encumbering the Hoffmans' interest in a condominium unit at 5510 North Sheridan Road in Chicago. U.S. Bank National Ass'n v. Hoffman, 2012 CH 6382 (Cir. Ct. Cook. Co.). The association was named as a defendant in the foreclosure case but never appeared. On June 14, 2012, the court entered a judgment of foreclosure and sale and defaulted the association.

¶ 4     On December 26, 2012, before the property was sold pursuant to the foreclosure court's order, the association sued the Hoffmans pursuant to the Forcible Entry Act. 5510 North Sheridan Road Condominium Ass'n v. Hoffman, 2012 M1 731922 (Cir. Ct. Cook. Co.). On April 17, 2013, the court hearing that case entered an order of possession in favor of the association.

¶ 5     Pursuant to the foreclosure court's order, the unit was set for a judicial sale to be held on May 27, 2014. U.S. Bank was the successful bidder. On June 25, 2014, notwithstanding the forcible entry and detainer court's April 17, 2013, possession order in favor of the association, the foreclosure court confirmed the sale and granted possession to U.S. Bank. U.S. Bank acquired title to the property on July 3, 2014, through a deed issued pursuant to the foreclosure court's confirmation order.

¶ 6     On October 31, 2014, the association transmitted a 30-day notice to U.S. Bank, claiming that the bank was "in default in the payment of [its] proportionate share of the common expenses." The association demanded payment of $81,400.35, which included, among other things, regular and special assessments, parking fees, and late fees which had accrued from October 1, 2012, through October 1, 2014. In January 2015, U.S. Bank paid $14,968.76 to the association, representing only the postsale expenses that had accrued from August 2014 to January 2015.

¶ 7     On January 30, 2015, the association filed this lawsuit under the Forcible Entry Act demanding payment from U.S. Bank for the preforeclosure sale common expenses for the unit that were in arrears and for possession. The association's theory of recovery was that its "lien

for all past due assessments has not been extinguished and remain[ed] valid" because U.S. Bank "failed to [timely] pay the condominium association assessments, parking fees, late fees and other charges the month after the date of the judicial foreclosure sale" as required by section 9(g)(3) of the Act.

¶ 8        On July 24, 2015, U.S. Bank and the association filed cross-motions for summary judgment. In its motion, U.S. Bank argued that section 9(g)(3) did not contain a timing requirement and that its January 2015 payment for postsale expenses therefore extinguished the association's lien against the unit for presale expenses. The association, in contrast, insisted that section 9(g)(3) did contain a timing requirement with which U.S. Bank failed to comply. As a result, the association reasoned, U.S. Bank's January 2015 payment did not extinguish the association's lien. The association claimed that U.S. Bank owed it $94,873.79, consisting of (1) $48,308.17 for presale expenses from October 2012 through May 2014, (2) $25,816.88 for postsale expenses from June 2014 through September 2015, (3) $11,980.06 for a 2014 special assessment, (4) $6253.28 for a 2014 special assessment, and (5) $2515.40 for legal fees.

¶ 9        On September 11, 2015, U.S. Bank transmitted two checks to the association for $24,989.60 and $827.28. The checks were accompanied by a letter from U.S. Bank's counsel stating that they were being "tendered as payment in full of all outstanding amounts due for the Unit from June 2014 through and including September 2015."

¶ 10       In its response in opposition to U.S. Bank's motion for summary judgment, the association argued that the September 2015 payments did not extinguish its lien for presale expenses because U.S. Bank made them in "bad faith." By contrast, in its response in opposition to the association's motion for summary judgment, U.S. Bank argued that the association's lien for presale expenses had been extinguished by the January and September 2015 payments. In its reply in support of its motion for summary judgment, the association acknowledged U.S. Bank's January and September 2015 payments but contended they were "partial payments."

¶ 11       On December 28, 2015, the circuit court entered two orders. The first order (1) granted the association's motion for summary judgment, (2) denied U.S. Bank's motion for summary judgment, and (3) granted the association leave to file a petition for attorney fees. The second was an order for possession, which awarded the association possession of the unit (stayed for three months) and $73,364.55 representing damages for unpaid presale and postsale common expenses. On January 8, 2016, the association filed a petition for attorney fees under the Forcible Entry Act. On January 22, 2016, the association filed a notice of appeal from the December 28, 2015, orders.

¶ 12                                          ANALYSIS

¶ 13       On appeal, U.S. Bank argues that the circuit court erred by granting summary judgment to the association because, in its view, it successfully extinguished the association's statutory lien for presale common expenses under section 9(g)(3) by remitting the January 2015 payment for postsale expenses to the association. The association contends that U.S. Bank's January 2015 payment did not extinguish the association's lien for presale common expenses because U.S. Bank did not remit payment to the association for postsale common expenses on "the first day of the month after the date of the judicial foreclosure sale."

¶ 14       Although neither party has raised the issue, we begin by considering our jurisdiction. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action,

regardless of whether either party has raised the issue."). This court has the authority to hear appeals from (1) "final judgments" and (2) nonfinal orders as defined by supreme court rule. Ill. Const. 1970, art. VI, § 6. A request for attorney fees is a "claim" within the meaning of the supreme court rules. *Northern Trust Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 397 (1991). Accordingly, U.S. Bank's notice of appeal was premature when filed because it was filed before the circuit court ruled on the association's petition.

¶ 15 That U.S. Bank's notice of appeal was initially premature, however, ultimately does not deprive this court of jurisdiction. Illinois Supreme Court Rule 303(a)(2) provides:

> "When a timely postjudgment motion has been filed by any party, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of said motion or claim is entered." Ill. S. Ct. R. 303(a)(2) (eff. Jan. 1, 2015).

According to the clerk of the circuit court's online docket for this case—of which this court may take judicial notice (*People v. Grau*, 263 Ill. App. 3d 874, 876 (1994))—the circuit court disposed of the association's fee petition on February 17, 2016, by entering an order awarding the association $15,788.73 in fees—the full amount it requested. At that time, pursuant to Rule 303(a)(2), U.S. Bank's notice of appeal became effective. Accordingly, we have jurisdiction over U.S. Bank's appeal of the circuit court's December 28, 2015, orders.

¶ 16 Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). We review a circuit court order granting summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 17 To determine whether the court properly granted summary judgment to the association, we must interpret section 9(g)(3) to determine whether it sets forth a timing deadline for foreclosure purchasers to pay condominium associations for postsale common expenses. "Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). "The plain language of a statute is the most reliable indication of the legislature's objectives in enacting that particular law [citation], and when the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). If, on the other hand, a statute is vague or ambiguous, a court may resort to canons of statutory construction to determine the meaning of a provision. *Id.* at 60.

¶ 18 Section 9(g)(1) of the Act permits condominium associations to assert liens against a unit owner for unpaid common expenses. 765 ILCS 605/9(g)(1) (West 2014). Section 9(g)(3) of the Act sets forth a mechanism by which foreclosure purchasers may extinguish an association's lien for presale common expenses. It provides:

> "The purchaser of a condominium unit at a judicial foreclosure sale, or a mortgagee who receives title to a unit by deed in lieu of foreclosure or judgment by common law strict foreclosure or otherwise takes possession pursuant to court order under the Illinois Mortgage Foreclosure Law, shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed *from and after the first day of the month after the date of the judicial foreclosure sale*, delivery of the deed in lieu of foreclosure, entry of a judgment in common law strict foreclosure, or taking of

possession pursuant to such court order. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court, a deed in lieu thereof has been accepted by the lender, or a consent judgment has been entered by the court." (Emphasis added.) 765 ILCS 605/9(g)(3) (West 2014).

¶ 19 This case turns on the meaning of the italicized phrase, "from and after the first day of the month after the date of the judicial foreclosure sale," contained in section 9(g)(3). U.S. Bank contends it simply denotes the point in time after which a "purchaser of a condominium unit at a judicial foreclosure sale" becomes responsible for paying postsale common expenses. The association, by contrast, argues that the phrase sets forth a strict deadline by which purchasers must remit payment for postsale expenses to extinguish any lien for *presale* common expenses.

¶ 20 We hold, based on a plain reading of section 9(g)(3), that the phrase "from and after the first day of the month after the date of the judicial foreclosure sale" does not create a timing deadline with which purchasers must comply to avail themselves of the statute's extinguishment provision. Instead, that phrase simply demarcates the precise moment in time when the foreclosure-purchaser becomes liable for *postsale* common expenses.

¶ 21 *Pembrook Condominium Ass'n-One v. North Shore Trust & Savings*, 2013 IL App (2d) 130288, is instructive. In *Pembrook*, the defendant bank successfully bid on a condominium unit at a judicial sale on April 13, 2012. *Id.* ¶ 3. On June 18, 2012, the bank tendered payment to the plaintiff condominium association for postsale expenses for May and June 2012. *Id.* ¶ 16. The association argued that the bank's June 18 payment did not trigger section 9(g)(3)'s extinguishment provision because that payment was not made "the first day of the month after the date of the judicial foreclosure sale." (Internal quotation marks omitted.) *Id.* ¶ 16. The court disagreed, holding that the bank's "payment of association charges that came due from May 2012 on defeats plaintiff's attempt to enforce its lien for the period in dispute" because the June 18 payment "covered charges due on May 1, 2012." *Id.* ¶¶ 15-16.

¶ 22 *Pembrook* differs from this case in one notable way. In *Pembrook*, the bank paid the full amount of postsale expenses owed to the plaintiff association before the plaintiff sued. Here, U.S. Bank did not pay the full amount for postsale expenses until several months after the association filed this lawsuit. This distinction, however, is ultimately immaterial to our analysis. If, as the association contends here, section 9(g)(3) sets forth a hard-and-fast deadline, then the fact that the June 18 payment that the bank in *Pembrook* made also covered payments that were due to the Pembrook association on May 1, 2012 (the actual "first day of the month after the date of the judicial foreclosure sale") should have been completely irrelevant to the court's analysis and the Pembrook association should have prevailed. The *Pembrook* court's resolution of the section 9(g)(3) issue simply cannot be reconciled with the construction of the statute proposed by the association here.

¶ 23 We find further guidance in the Illinois Supreme Court's recent decision in *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372. In *1010 Lake Shore*, the court was asked to construe section 9(g)(3) and determine whether it merely provided an alternative, or the sole, method by which a purchaser could extinguish a condominium association's lien under section 9(g)(1) for presale expenses. In the course of its analysis, the court stated, "[t]he first sentence of section 9(g)(3) plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the

- 5 -

foreclosure sale." *Id.* ¶ 24. Continuing, the court explained that section 9(g)(3)'s second sentence—which states, "such payment confirms the extinguishment of any lien created (765 ILCS 605/9(g)(3) (West 2014))—"provides an incentive for prompt payment of those postforeclosure sale assessments." *1010 Lake Shore*, 2015 IL 118372, ¶ 24.

The association's argument cannot be reconciled with *1010 Lake Shore*. The supreme court held in *1010 North Shore* that section 9(g)(3)'s first sentence—which contains the key phrase "from and after the first day of the month after the date of the judicial foreclosure sale"—means only the time when the purchaser begins to be liable for postsale assessments. *Id.* ¶¶ 23-24. The court's statement that section 9(g)(3)'s second sentence provides purchasers with an incentive to pay postsale expenses promptly further undermines the association's argument here. As the supreme court's analysis indicates, the General Assembly was aware of and concerned with the possibility that purchasers who became liable for postsale expenses would not pay in a timely manner. To address that problem, the legislature designed section 9(g)(3) to encourage prompt payment of *postsale* expenses by setting their payment as a precondition to the extinguishment of association liens for *presale* expenses.

¶ 25     In numerous other areas, the General Assembly has drafted statutes with deadlines and timing rules. See, *e.g.*, 735 ILCS 5/2-402 (West 2014) (explicit, text-based six-month deadline to convert respondent in discovery to part defendant); 735 ILCS 5/13-212 (West 2014) (explicit, text-based two year limitations period to bring medical malpractice claim). If the General Assembly intended for section 9(g)(3) to contain a strict timing deadline, it well knew the words to accomplish that purpose. The absence of such language is strong evidence the legislature did not intend for section 9(g)(3) to function in the manner envisioned by the association.

¶ 26     As a fallback position, the association argues that it should still prevail under section 9(f) of the Act. Section 9(f) provides: "Payment of any assessment shall be in amounts and at times determined by the board of managers." 765 ILCS 605/9(f) (West 2014). Relying on section 9(f), the association contends that U.S. Bank's payments for postsale expenses were untimely because the association's declaration states that assessments are due on "the first of each and every month." Putting aside the fact that the presale delinquencies in question were accrued by the Hoffmans, not U.S. Bank, this argument is not persuasive.

¶ 27     We first note that sections 9(f) and 9(g)(3) are essentially unrelated. Section 9(f) concerns when assessments are due. Section 9(g) and its various subparts, by contrast, relate to the creation and extinguishment of liens for unpaid common expenses. Section 9(g) does not incorporate or otherwise refer in any way whatsoever to section 9(f).

¶ 28     The association's reliance on section 9(f) is misplaced for a second reason. By relying on section 9(f) to construe section 9(g)(3), the association is inviting us to apply the doctrine of *in pari materia*. "Under this doctrine of construction, two legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect." *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002). The doctrine applies when construing sections of the same statute. See *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). But we do not need to resort to a canon of construction if the language of the statute is plain. *DeLuna*, 223 Ill. 2d at 59. As noted above, section 9(g)(3) is neither vague nor ambiguous. Its meaning is clear from its plain text. The association, therefore, cannot supplement its text by importing section 9(f) into section 9(g)(3).

¶ 29 The association claimed that U.S. Bank owed $40,785.64 for postsale expenses from June 2014 through September 2015. The undisputed facts show that in January 2015, U.S. Bank paid the association $14,968.76, and that by September 11, 2015, U.S. Bank had paid the association the $40,785.64 it claimed it was owed. Thus, by September 11, 2015, U.S. Bank had fully paid the amounts it owed for the unit's postsale common expenses. In so doing, U.S. Bank "confirm[ed] the extinguishment" of the association's lien for presale common expenses. 765 ILCS 605/9(g)(3) (West 2014); *Pembrook*, 2013 IL App (2d) 130288, ¶¶ 15-16. Consequently, the circuit court erred by granting summary judgment in favor of the association. We reverse that decision.

¶ 30 U.S. Bank also contends that the court erred by awarding the association attorney fees under the Act. As noted, the court disposed of the association's fee petition by awarding the association $15,788.73 in fees on February 17, 2016. But that order is not before this court, because U.S. Bank filed its notice of appeal on January 22, 2016—well before the court ruled on the association's fee petition. U.S. Bank did not thereafter file a second appeal from that order. We, therefore, do not have jurisdiction over that order.

¶ 31 On rehearing in this court, the association argues that, notwithstanding its lack of success on the main issue, it is at least entitled to attorney fees for the work its attorneys performed seeking payment of postsale expenses. We decline to reach this issue in the first instance and remand the matter to the circuit court to determine if the association is due any such fees and, if so, in what amount.

¶ 32 In summary, before judgment was entered against it, U.S. Bank paid the full amount of postsale expenses it owed the association, thereby extinguishing the association's lien for presale expenses pursuant to section 9(g)(3)—and with it any entitlement to recovery possessed by the association. Therefore, U.S. Bank was entitled to summary judgment as a matter of law.

¶ 33                                    CONCLUSION

¶ 34 We reverse the circuit court's order (1) granting the association's motion for summary judgment and (2) denying U.S. Bank's motion for summary judgment. We also reverse the court's order awarding the association possession of the unit and $73,364.55 in damages. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter summary judgment in favor of U.S. Bank. We remand the case to the circuit court for further proceedings consistent with this opinion.

¶ 35 Reversed and remanded with instructions.