2020 IL App (1st) 190112-U
No. 1-19-0112

SECOND DIVISION
January 28, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| FORD CITY CONDOMINIUM ASSOCIATION, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 M1 715310 |
| | ) | |
| WILMINGTON SAVINGS FUND SOCIETY FSB DBA CHRISTIANA TRUST, not in its individual capacity but solely as trustee for BCAT 2015-14BTT, U.S. BANK TRUST NATIONAL ASSOCIATION, as trustee of AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2015A+, and ANY UNKNOWN OCCUPANTS, | ) | The Honorable Joel Chupack, Judge Presiding. |
| Defendants | ) | |
| (U.S. Bank Trust National Association, as trustee of American Homeowner Preservation Trust Series 2015A+, Defendant-Appellant). | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* Where the foreclosure purchaser's payment of post-sale common expenses was not made promptly, it did not serve to extinguish the condominium association's lien on the unit for unpaid pre-sale common expenses under section 9(g)(3) of the Condominium Property Act (765 ILCS 605/9(g)(3) (West 2016)). In addition, the trial court did not abuse its discretion in awarding the condominium association attorney's fees.

¶ 2    In this eviction proceeding, defendant U.S. Bank Trust National Association, as trustee of American Homeowner Preservation Trust Series 2015A+ ("U.S. Bank"), appeals from the trial court's judgment in favor of plaintiff, Ford City Condominium Association ("Ford City") on its claim for past-due assessments and other fees and costs. Defendant also appeals from the trial court's award of attorney's fees to Ford City. For the reasons that follow, we affirm.

¶ 3    BACKGROUND

¶ 4    Ford City is the condominium association for the condominium building located at 4280 W. Ford City Drive in Chicago, Illinois. At issue here is unit 207 of that building ("the property"). On January 4, 2017, the property was sold at a judicial foreclosure sale. Defendant Wilmington Savings Fund Society FSB DBA Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-14BTT ("Wilmington"), the mortgagee of the property, was the successful bidder at the sale. The sale was confirmed on January 26, 2017. On July 26, 2017, Ford City sent a 30-day demand to Wilmington, demanding payment of $27,379.42 in past due assessments, late fees, and collection costs. The demand also requested payment of an additional $146.77, representing $100.00 in attorney's fees, a $40.00 tract search fee, and $6.77 in certified mailing costs.

¶ 5    On August 31, 2017, U.S. Bank, which had been quitclaimed the property by Wilmington on July 17, 2017, paid Ford City $4,913.19. U.S. Bank claims that this amount represented eight months of regular assessments of $270.17 from February through September 2017 and eight

months of special assessments of $252.00 for the same period. The remainder of the amount was intended to be a prepayment of the October 2017 assessments. U.S. Bank claims that, pursuant to section 9(g)(3) of the Condominium Property Act ("Act") (765 ILCS 605/9(g)(3) (West 2016)), this payment extinguished any lien Ford City had on the property for unpaid pre-sale common expenses and collection costs.

¶ 6 Despite this payment, Ford City denied that U.S. Bank's payment extinguished the lien on the property for the unpaid pre-sale assessments. Ford City then instituted this suit, seeking possession of the property and a judgment against U.S. Bank for the past due assessments, fees, and costs.

¶ 7 Following unsuccessful cross-motions for summary judgment, the matter went to trial. The record does not contain a transcript from the trial. Following the trial, the trial court entered an order granting possession of the property to Ford City and continuing the matter for ruling on Ford City's monetary claim. U.S. Bank filed a motion to reconsider, arguing that its payment of the post-sale assessments extinguished Ford City's lien on the property for the unpaid pre-sale assessments. U.S. Bank also disputed some of the attorney's fees claimed by Ford City. Ford City responded by arguing that U.S. Bank's payment did not extinguish the lien, because the amount necessary to extinguish the lien was $5,726.13, comprised not only of the assessments, but also the cost of two sales packets, and attorney's fees related to the demand notice and correspondence with U.S. Bank's counsel. Ford City also argued that U.S. Bank's payment was not made promptly, coming seven months after the foreclosure sale.

¶ 8 Following a hearing on the motion to reconsider and Ford City's request for attorney's fees, the trial court denied U.S. Bank's motion to reconsider. In doing so, the trial court found that Ford City's lien for pre-sale assessments was not extinguished by U.S. Bank's payment of

$4,913.19, because the payment was not prompt under the circumstances of the case and because U.S. Bank's payment did not pay any of the post-sale expenses other than the post-sale assessments. At the same hearing, the trial court heard U.S. Bank's objections to Ford City's requested attorney's fees, ultimately determining that Ford City was entitled to attorney's fees of $8,768 plus costs of $1000.40. The trial court directed Ford City to file an affidavit of common expenses prior to the entry of a judgment on that issue. Thereafter, Ford City filed an affidavit stating that the outstanding common expenses due for the property, including pre-sale common expenses, totaled $32,258.82. On December 28, 2018, the trial court entered judgment against U.S. Bank in the amount of $32,258.82.

¶ 9        U.S. Bank then instituted this timely appeal.

¶ 10        ANALYSIS

¶ 11        On appeal, U.S. Bank argues that the trial court erred in concluding that U.S. Bank's payment of $4,913.19 did not extinguish Ford City's lien on the property for unpaid pre-sale assessments and costs, because the amount of the payment was sufficient to cover all of the post-sale common expenses, as required by section 9(g)(3) of the Act, and because there is no requirement that the payment be made promptly. U.S. Bank also argues that the attorney's fee award should be reduced, because some of the claimed fees were not sufficiently proven or were duplicative. We affirm.

¶ 12        Extinguishment of Lien

¶ 13        U.S. Bank's first contention on appeal is that the trial court erred in holding that Ford City's lien on the property for pre-sale assessments, fees, and costs was not extinguished by U.S. Bank's payment of $4,913.19. According to U.S. Bank, the Act does not require payment of any expenses other than common expenses, and the trial court improperly included fees and costs that did not

qualify as common expenses under the Act. In addition, U.S. Bank also contends that the Act does not impose any deadline for making payment, and the trial court's finding to the contrary was erroneous. Because we conclude that U.S. Bank was required to make payment promptly and because we find no basis in the record on which to reverse the trial court's conclusion that U.S. Bank's payment was not prompt, we need not address U.S. Bank's contention regarding the amount of the payment, and we affirm.

¶ 14    The Act imposes a duty on condominium owners to pay their proportionate share of "common expenses." 765 ILCS 605/9(a) (West 2016). "Common expenses" are defined as "the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed by the Board of Managers of the Unit Owner's Association." 765 ILCS 605/2(m) (West 2016). The failure to pay such expenses results in a lien on the owner's property:

> "If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with any interest, late charges, reasonable attorney fees incurred enforcing the covenants of the condominium instruments, rules and regulations of the board of managers, or any applicable statute or ordinance, and costs of collections shall constitute a lien on the interest of the unit owner in the property ***."

765 ILCS 605/9(g)(1) (West 2016). The Act provides a mechanism by which foreclosure purchasers can extinguish the lien:

> "The purchaser of a condominium unit at a judicial foreclosure sale, or a mortgagee who receives title to a unit by deed in lieu of foreclosure or judgment by common law strict foreclosure or otherwise takes possession pursuant to court order under the Illinois Mortgage Foreclosure Law, shall have the duty to pay the unit's proportionate share of the

common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale, delivery of the deed in lieu of foreclosure, entry of a judgment in common law strict foreclosure, or taking of possession pursuant to such court order. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court, a deed in lieu thereof has been accepted by the lender, or a consent judgment has been entered by the court."

765 ILCS 605/9(g)(3) (West 2016).

¶ 15    There is no dispute that a lien existed against the property for unpaid pre-sale assessments, fees, and costs. The question presented here is whether U.S. Bank's payment of $4,913.19 on August 31, 2017, extinguished that lien. U.S. Bank argues that the trial court erred in concluding that U.S. Bank's payment did not extinguish the lien because U.S. Bank's payment was not prompt. According to U.S. Bank, the Act does not impose a time limitation on making payment and cases imposing such a limitation should not be followed.

¶ 16    We agree that the language of the Act does not explicitly impose a deadline by which an extinguishing payment must be made. We disagree, however, that we should disregard precedence concluding that a requirement for prompt payment is implicit in the Act. There has existed within the First District a split of authority regarding whether prompt payment is required to extinguish a lien under the Act. Through early 2018, the Sixth Division had generally concluded that there was no timing requirement for making payment under the Act. See *Quadrangle House Condominium Association v. U.S. Bank, N.A.*, 2018 IL App (1st) 171713, ¶¶ 11-15; *5510 Sheridan Road Condominium Association v. U.S. Bank*, 2017 IL App (1st) 160279, ¶¶ 20-25. Meanwhile, the

Second Division concluded that "prompt" payment is necessary to extinguish a lien under the Act. See *U.S. Bank, N.A. for Truman 2012 SC2 Title Trust v. Quadrangle House Condominium Association*, 2018 IL App (1st) 171711, ¶ 20; *Country Club Estates Condominium Association v. Bayview Loan Servicing LLC*, 2017 IL App (1st) 162459, ¶ 21.

¶ 17    Since the issuance of the above-cited decisions, however, the Sixth Division issued its decision in *V & T Investment Corp. v. West Columbia Place Condominium Association*, 2018 IL App (1st) 170436. In that case, in determining whether the foreclosure purchaser's payment extinguished the lien, the Sixth Division applied the analysis of *Country Club Estates* to conclude that the payment extinguished the lien because it was promptly made under the circumstances. *Id.* at ¶¶ 30-31. Thus, although *V & T Investment* did not explicitly overrule *Quadrangle House* or *5510 Sheridan*, it appears that the Sixth Division has changed course and joined the Second Division in requiring that a prompt payment be made to extinguish a lien under the Act.

¶ 18    Despite this unity of authority, U.S. Bank nevertheless argues that we should abandon our holdings in *U.S. Bank* and *Country Club Estates* and the Sixth Division's holding in *V & T Investment*, because the Act's language does not contain a timing requirement for payment and because the cases requiring prompt payment misread the holding in *1010 Lake Shore Association v. Deutsche Bank National Trust Company*, 2015 IL 118372. As mentioned above, we acknowledge that the Act does not contain an explicit requirement for prompt payment. *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 14. That, however, does not completely answer the question before us.

¶ 19    In *Country Club Estates*, we held that despite the lack of an explicit timing requirement in the Act, the legislative history of section 9(g) demonstrated the General Assembly's concern over the difficulties imposed on condominium associations when unit owners fail to pay their share of

common expenses. *Id.* at ¶ 15. We also looked at the Supreme Court's statement in *1010 Lake Shore* that the second sentence of section 9(g)(3) of the Act, which calls for the extinguishment of pre-sale liens upon payment of the post-sale common expenses, provided an incentive for the "prompt" payment of the post-sale common expenses. *Id.* at ¶ 18. We concluded that this statement evidenced the implicit requirement of prompt payment, because if a purchaser could withhold payment indefinitely, then there would be no such incentive under the Act. *Id.*

¶ 20    U.S. Bank argues that the Supreme Court's statement in *1010 Lake Shore* simply noted the incentive for prompt payment but did not actually impose a deadline for payment. According to U.S. Bank, its interpretation of the Supreme Court's statement is the correct one, because it is consistent with a purchaser's desire to withhold payment until it holds title and has possession of the property. Although we note U.S. Bank's interpretation, we do not believe that it warrants departure from the holding in *Country Club Estates*, especially since it represents the current state of existing case law and our interpretation serves the General Assembly's goal of protecting condominium owners.

¶ 21    Having concluded that departure from prevailing precedence is not warranted and that the trial court did not err in applying a requirement that U.S. Bank's payment be prompt, we now turn to the question of whether the trial court erred in finding that U.S. Banks payment in this case was not prompt. Pursuant to the holding of *Country Club Estates*, in the absence of extenuating circumstances, payment should be made in the month following purchase. *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 22. This is not a strict deadline, however, and the determination of whether a payment was prompt should be determined by examining the facts and circumstances of each case. *Id.* at ¶¶ 23-24, 29. These circumstances might include an unreasonable refusal by

the association to accept payment or a delay between the judicial sale and the confirmation of that sale by the foreclosure court. *Id.* at ¶¶ 23-24.

¶ 22    Here, U.S. Bank makes no argument on appeal that its payment was prompt under the circumstances and, thus, that the trial court's conclusion in that respect was erroneous. Moreover, it appears from the parties' filings on U.S. Bank's motion to reconsider and the trial court's statements at the hearing on the motion to reconsider that the trial court's determination that U.S. Bank's payment was not prompt was based on evidence presented at trial. Despite this, U.S. Bank did not include in the record on appeal any transcripts or bystander's report of the testimony and arguments presented at trial. Accordingly, we are unable to provide any meaningful review of the trial court's determination of promptness and, thus, must affirm in this respect. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 23    Because we affirm the determination that U.S. Bank did not extinguish Ford City's lien for unpaid pre-sale common expenses because its payment was not prompt, we need not review the trial court's finding that the amount of U.S. Bank's payment was insufficient to extinguish the lien.

¶ 24    Attorney's Fees

¶ 25    U.S. Bank also disputes the trial court's award of certain attorney's fees. A party may only recover reasonable attorney's fees, and the determination of what constitutes reasonable attorney's fees in a case is left to the sound discretion of the trial court. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987). Under section 9-111(b) of the Code of Civil Procedure (735

ILCS 5/9-111(b) (West 2018)), in determining reasonable attorney's fees, the trial court must consider the time expended by the attorney, the reasonableness of the hourly rate for the work performed, the reasonableness of the amount of time expended for the work performed, and the amount in controversy and the nature of the action. The party seeking the fees bears the burden of presenting sufficient evidence from which the trial court can determine the reasonableness of the claimed fees. *Kaiser*, 164 Ill. App. 3d at 983. To this end, the fee petition must "specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Id.* at 984.

¶ 26    U.S. Bank does not take issue with the entirety of the attorney's fees award, but instead disputes the award of specific fee entries. We address each of these in turn.

¶ 27    First, U.S. Bank contests the award of $198.00 for 1.1 hours on January 2, 2018. The supporting timesheets described the work on this date as "Review tract search; review account history; draft and file First Amended Complaint." According to U.S. Bank, it was unreasonable to spend 1.1 hours on amending the complaint where the only material change was the addition of U.S. Bank as a party. U.S. Bank ignores, however, that the 1.1 hours was not simply spent on amending the complaint, but also on reviewing the tract search and account history. Accordingly, the trial court did not abuse its discretion in awarding these fees.

¶ 28    U.S. Bank next takes issue with the award of $162.00 for the January 23, 2018, entry for 0.9 hours to "[p]repare for and appear in court for status hearing." U.S. Bank argues that the entry lacks sufficient detail regarding the work performed to support an award. We disagree. Although the entry does not identify every step taken in preparing for the hearing, it does inform the trial court what work was done—preparation for and attendance at a status hearing. Moreover, even

without knowing the minute details of the preparation or the hearing, we hardly think an hour is an unreasonable amount of time to spend both preparing for and attending a hearing.

¶ 29    U.S. Bank also takes issue with the entries of February 27, 2018, and March 27, 2018, as duplicative, because they both involved reviewing the answer filed by U.S. Bank. Despite the fact that the hearing transcript makes clear that the parties possessed a timesheet containing these entries, that timesheet is not included in the record on appeal. Instead, U.S. Bank simply cites to the hearing transcript where the parties discuss these entries. Absent the timesheets containing these entries, it is impossible for us to assess whether they are duplicative of each other. See *Foutch*, 99 Ill. 2d at 391-92. This is especially true where the trial court's comments at the hearing suggest that the entries, contrary to U.S. Bank's contentions, indicated that more work was performed on these dates other than just reviewing the answer. Given the inadequacy of the record, we cannot say that the trial court abused its discretion.

¶ 30    Next, U.S. Bank contends that the entries of March 6, 2018, and April 3, 2018, for preparing for and attending a status hearing should have been reduced in half to 0.9 hours because the entries lacked sufficient detail. Again, U.S. Bank failed to include or cite to the timesheet containing these entries in the record on appeal, making it impossible for us to assess their level of detail. For that reason alone, we must assume that the trial court did not err in awarding those fees. See *Foutch*, 99 Ill. 2d at 391-92. In addition, as discussed above, 0.9 hours for preparing for and attending a status hearing is not unreasonable.

¶ 31    For the same reasons that we uphold the trial court's award for the fee entries dated March 6, 2018, and April 3, 2018, we also affirm the trial court's award of fees for 0.95 hours for preparing for and attending a status hearing.

¶ 32    U.S. Bank next complains that the 5.1 hours spent by Ford City's counsel on drafting, reviewing, and finalizing its response to U.S. Bank's motion for summary judgment was excessive. According to U.S. Bank, because Ford City conducted all of the necessary research and document review when it previously filed its own motion for summary judgment, simply typing the response to U.S. Bank's motion for summary judgment should not have taken more than 1.5 hours. Once again, the timesheet with these entries is not included in the record on appeal, thereby making it impossible for us to review whether they adequately described 5.1 hours of work. See *Foutch*, 99 Ill. 2d at 391-92. Even assuming that U.S. Bank accurately represents the entire content of these entries, we cannot say that the trial court abused its discretion in finding 5.1hours to be reasonable. Even if Ford City conducted some relevant research in filing its own motion for summary judgment, it is not unreasonable for its counsel to review that research or conduct updated research on the arguments raised in U.S. Bank's motion. Moreover, drafting a response or any other pleading is not as simple as just sitting down and typing. It also involves the application of the attorney's legal knowledge to the facts, which requires more time than simply typing mindless words.

¶ 33    For these same reasons, U.S. Bank's claim that an award of fees for 2.4 hours spent reviewing U.S. Bank's response to Ford City's motion for summary judgment and drafting and filing its reply should have been reduced to 1.5 hours is without merit.

¶ 34    Next, U.S. Bank argues that the entries of July 31, 2018, and August 7, 2018, should not have been allowed. According to U.S. Bank, at these times, Ford City sought a continuance, but failed to provide the trial court with courtesy copies twice, thereby necessitating additional court appearances. The timesheet with these entries is not included in the record on appeal, so it is impossible for us to determine what work was claimed to have been performed on these dates. See

*Foutch*, 99 Ill. 2d at 391-92. In addition, U.S. Bank does not describe the entries. It is not clear what these dates represent: the dates on which the request for continuance was drafted, dates on which hearings were continued, etc. Moreover, U.S. Bank does not cite to anything in the record to support its claim that Ford City failed to provide courtesy copies to the trial court and that its failure to do so necessitated additional appearances. For these reasons, U.S. Bank has forfeited any argument with respect to these entries. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 35    Finally, U.S. Bank disputes the $180 awarded for the 1.5 hours spent in drafting a motion *in limine*. U.S. Bank contends that only 30 minutes was appropriate, because the motion was presented at trial, never noticed, and did not contain much supporting authority. Once again, this timesheet is not in the record on appeal. More importantly, U.S. Bank does not cite to the motion *in limine* in the record or provide a transcript of the presentation of the motion, again making it is impossible for us to conduct any meaningful review of this claim. Thus, we must presume that the trial court did not abuse its discretion in making this award. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 36     CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 38    Affirmed.